UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NANCY S.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00362
Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Nancy S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 14, *Defendant's Memorandum in Opposition*, ECF No. 17, *Plaintiff's Reply*, ECF No. 18, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 11, 2017, alleging that she has been disabled since April 1, 2017, based on a number of physical and mental impairments. R. 188-93, 194-200.[3] The applications were denied initially and upon reconsideration, R. 69-92, 95-122, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 140, 141-42. Administrative Law Judge ("ALJ") Mark Hockensmith held a hearing on July 11, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36-68. In a decision dated August 1, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from April 1, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 17-30. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 30, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

II.    LEGAL STANDARD

   A.     Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step

five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 46 years old on April 1, 2017, her alleged disability onset date. R. 29. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 19.

At step two, the ALJ found that Plaintiff 's chronic obstructive pulmonary disease, emphysema, mild cervical degenerative disc disease, depression, and anxiety were severe impairments. R. 20.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant is capable of: occasionally lifting/carrying 10 pounds; frequently lifting/carrying less than 10 pounds; standing or walking six hours of an eight hour workday; and sitting six hours of an eight hour workday. The claimant cannot climb ladders/ropes/scaffolds. She is limited to occasionally climbing ramps/stairs and crawling. The claimant is capable of frequently stooping, kneeling, and crouching. She should have no more than occasional exposure to extreme heat and cold as well as humidity. The claimant should have no more than occasional exposure to fumes, dusts, gases, and poorly ventilated areas. The claimant cannot work around unprotected heights or dangerous machinery. The claimant is limited to simple, routine tasks in a static work environment. She should have no fast paced work or strict production quotas.

R. 22. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a fast-food worker and production assembler. R. 28.

5

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*i.e.*, approximately 25,000 jobs as a document preparer; approximately 15,000 jobs as a food and beverage order clerk; and approximately 12,000 jobs as a call out operator—existed in the national economy and could be performed by Plaintiff. R. 29. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 1, 2017, her alleged disability onset date, through the date of the decision. R. 30.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five; she asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 17.

## IV. RELEVANT EVIDENCE

Although the ALJ found that Plaintiff suffers a number of severe impairments, it is Plaintiff's history of breathing problems, including hospitalizations, that Plaintiff addresses in this action. Plaintiff testified that she suffers respiratory infections at least six times per year. R. 57.  She called in sick at least once per week at her past places of employment because of pneumonia, bronchitis, and other respiratory infections. R. 51. She has difficulty climbing the stairs to reach her third-floor apartment. R. 44. As a result, she rarely leaves her apartment. R. 45. She can stand or walk for only "a few minutes" before she experiences discomfort. R. 53.

She undergoes "breathing treatments" and uses an inhaler up to four times per day. *Id*. She becomes short of breath from simply speaking on the telephone. R. 57.

Phillip Swedberg, M.D., consultatively examined Plaintiff on behalf of the state agency in November 2017. R. 564-72. Dr. Swedberg expressly noted that Plaintiff, who continued to smoke at the time of the examination,[4] was suffering from and being treated for an upper respiratory infection at the time of his examination. R. 569, 571. He also noted a four-year history of shortness of breath, a diagnosis of COPD, and the use of inhalers and a nebulizer. R. 569. Pulmonary function studies were not obtained because Plaintiff was "currently on a steroid and antibiotic prescribed by her primary-care physician . . . for an upper respiratory infection." R. 572. Dr. Swedberg diagnosed shortness of breath with heavy tobacco abuse, chronic obstructive pulmonary disease, and current upper respiratory infection. R. 571. He opined:

> Based on the findings of this examination, the patient appears capable of performing only a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects. In addition, the patient has no difficulty sitting, reaching, grasping, and handling objects. There are no visual and/or communication limitations nor are there environmental limitations.

R. 571-72.

A pulmonary function study performed in January 2018 was interpreted as indicating "severe restrictive pulmonary disease with a moderately severe obstructive component." R. 580. Testing performed in February 2018 revealed a DLCO[5] of 6.37 and was interpreted as indicating "severe diffusion defect – pulmonary vascular." R. 575. However, it was also noted that Plaintiff was "unable to complete" the test, despite attempting to do so six times. *Id*.

---

[4] Plaintiff testified at the administrative hearing that she had by that time quit smoking. R. 58.
[5] The DLCO is the measure of the "diffusing capacity of the lungs for carbon monoxide." Listing 3.00C9. A DLCO test "measures the gas exchange across cell membranes in your lungs. . ." Listing 3.00F1.

Anton Freihofner, M.D., reviewed the record in February 2018 on behalf of the state agency. He expressly considered Listing 3.02, R. 75, but opined that Plaintiff has the RFC for a limited range of light work. R. 77-78. Indira Jasti, M.D., reviewed the record on behalf of the state agency on reconsideration in June 2018, expressly referred to Listing 3.02, R. 102, and agreed with Dr. Freihofner's assessment except that she also found that Plaintiff should also avoid concentrated exposure to extreme heat and cold. R. 103-05. Both state agency reviewing physicians found that Plaintiff's symptoms, including malaise, weakness, and fatigue, were "[f]ully [c]onsistent" with the evidence: "These allegations are supported by the evidence in file and considered consistent in nature." R. 103.

V.   DISCUSSION

   A.   Listing 3.02C

Plaintiff argues, first, that the ALJ erred in finding that she did not meet or equal Listing 3.02C. In order to qualify for disability under a listed impairment, a claimant "must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. §§ 404.1525(d); 416.925(d) (emphasis added). The claimant "must point to specific evidence that demonstrates [that] [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The United States Court of Appeals for the Sixth Circuit has held that an ALJ need only make sufficient findings somewhere in his decision to support his step three conclusion. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). Critically, the burden of proof at step three rests with the claimant. *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012).

Listing 3.02C, which addresses chronic respiratory disorders, requires that a claimant prove: "Average of two unadjusted, single-breath DLCO measurements (see 3.00F) less than or equal to the value in Table III for your gender and height without shoes (see 3.00F3a)," Listing 3.02C1, and Listing 3.00F2(b) set out the specific requirements of the DLCO test.[6] Plaintiff stands 61 inches tall per a DLCO test administered in 2018. R. 575. Accordingly, Table III of Listing 3.02 requires that her value be 8.5 or lower. As noted above, testing in February 2018 revealed a DLCO of 6.37 and was interpreted as indicating "severe diffusion defect – pulmonary vascular." *Id*.

At the administrative hearing, Plaintiff argued through her counsel only that her respiratory impairments met Listing 3.02 in light of the testing, "especially the DLCO testing. . . ." R. 41, 66.[7] In his decision, the ALJ found that Listing 3.02C was not met because "it was noted [that] the claimant was unable to complete the test with 6 tries." R. 20. In addition, the ALJ noted that the state agency reviewing physicians had considered the pulmonary function tests and medical record but had concluded that Plaintiff's impairments did not meet the criteria of the Listings.

> I find these opinions are persuasive as they offered citations to medical evidence including the pulmonary function tests. They also included specific notations of the claimant's DLCO values, but also observed that the claimant was unable to complete the testing. Furthermore, the state agency Disability Determination

---

[6] A valid DLCO test requires that the claimant be "medically stable at the time of the test," that the test "use the single-breath technique," and that the claimant's "time of inhalation … be less than 4 seconds," the "breath-hold time… be between 8 and 12 seconds," and "total exhalation time … be less than or equal to 4 seconds, with a sample collection time of less than 3 seconds." Listing 3.00F2(a), (b).

[7] Counsel also asked that, alternatively, the ALJ hold "a supplemental hearing with a medical expert to determine the listing argument" on the basis of the DLCO testing. R. 67. The ALJ denied this request "as the state Disability Determination Services physicians have reviewed the medical evidence including pulmonary function tests and offered opinions regarding the same including whether the claimant's impairments meet or equal the listings criteria … based on the results of this testing. No additional pulmonary function tests have been submitted in the record." R. 17. *See* SSR 17-2p, 2017 WL 3928306, at *4 ("If an adjudicator at the hearings or [Appeals Council] level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.").

> Services physicians are familiar with the listings criteria and are qualified to evaluate the medical issues in disability claims under the Social Security Act.

R. 20-21.

State agency reviewing physicians are expressly tasked with determining whether a claimant's impairments meet or equal a Listing. SSR 17-2p, 2017 WL 3928306, at *3 (March 27, 2017). Drs. Freihofner and Jasti expressly considered Listing 3.02 in their reviews of the medical record. R. 75, 102. The very fact that both reviewing physicians also considered Plaintiff's RFC demonstrates that both physicians concluded that Plaintiff's respiratory impairments neither met nor equaled Listing 3.02. *See* SSR 17-2p, 2017 WL 3928306, at *3 ("If we determine an individual's impairment(s) does not meet or medically equal a listed impairment, we continue evaluating the claim using the sequential evaluation process."). The opinions of these state agency reviewing physicians unquestionably provide substantial support for the finding of the ALJ in this regard. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) ("our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Plaintiff, whose burden it is to establish that her impairments either meet or equal a Listing at step three of the sequential evaluation process, has failed to offer evidence of medical equivalency. *See Sullivan v. Zebley*, 493 U.S. at 531 (To demonstrate equivalence, a claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment.")(emphasis in original). *See also Thacker v. Social Security Admin.*, 93 F. App'x 725, 728(6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency."). Plaintiff's contention in this regard is without merit.

B.  **Plaintiff's RFC**

Plaintiff next contends that the ALJ erred in crafting Plaintiff's RFC. This Court disagrees.

An RFC is "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). At the administrative hearing stage, it is the ALJ who must determine a claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c); 416.927(e)(2), 416.946(c). In making that determination, the ALJ must evaluate all the medical evidence as well as the claimant's testimony. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 633 (6th Cir. 2004). An ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009). However, the ALJ's RFC determination, like all findings of the ALJ, must be supported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009).

Dr. Swedberg, the consultative examiner, and the state agency reviewing physicians rendered opinions as to Plaintiff's ability to engage in work-related activities. The state agency physicians opined that Plaintiff had the RFC for a limited range of light work; Dr. Swedberg opined that Plaintiff "appears capable of performing only a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." R. 571-72. The ALJ considered these opinions as follows:

> While the overall opinions of Dr. Freihofner and Dr. Jasti support the ultimate conclusion that the claimant is not completely precluded from performing all work activity, I find their residual functional capacity assessments for light exertion work are not very persuasive. The medical record shows the claimant has a significant history of illnesses related to her respiratory issues that would further limit her to sedentary exertion work. This is consistent with Dr. Swedberg's opinion. Although Dr. Swedberg's opinion was not offered in vocationally relevant terms, I find his overall opinion is persuasive and consistent with the record including pulmonary

11

> function tests which show severe restrictive pulmonary disease with a moderately severe obstructive component. Nevertheless, the claimant's symptoms have been adequately managed with her prescribed treatment regimen. I have decreased the residual functional capacity to sedentary exertion work with respiratory and postural limitations to accommodate her impairments.

R. 27 (citations to record omitted). The ALJ went on to find that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant is capable of: occasionally lifting/carrying 10 pounds; frequently lifting/carrying less than 10 pounds; *standing or walking six hours of an eight hour workday*; and sitting six hours of an eight hour workday. The claimant cannot climb ladders/ropes/scaffolds. She is limited to occasionally climbing ramps/stairs and crawling. *The claimant is capable of frequently stooping, kneeling, and crouching*. She should have no more than occasional exposure to extreme heat and cold as well as humidity. The claimant should have no more than occasional exposure to fumes, dusts, gases, and poorly ventilated areas. The claimant cannot work around unprotected heights or dangerous machinery. The claimant is limited to simple, routine tasks in a static work environment. She should have no fast paced work or strict production quotas.

R. 22 (emphasis added).

Plaintiff argues that the ALJ's RFC determination is contradictory because he limited her to sedentary work but also found that she could "stand[ ] or walk[ ] six hours of an eight hour workday." *Plaintiff's Statement of Errors*, ECF No. 14, PageID# 875. The Acting Commissioner characterizes this phrase as a "minor and harmless scrivener's error." *Defendant's Memorandum in Opposition*, ECF No. 17, PageID# 896. This Court agrees with that characterization.

The ALJ found that Plaintiff had the RFC for "sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." R. 22. The regulatory definition of "sedentary work" includes jobs in which "walking and standing [that] are required occasionally." 20 C.F.R. §§ 404.1567(a); 416.967(a). However, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at * 5. "Light work," on the other hand, includes jobs that "requir[e] a good deal of walking or standing. . . ." 20 CFR §§ 404.1567(b); 416.967(b).

"[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL31251, at *5. The ALJ found the opinions of the state agency reviewing physicians, who opined that Plaintiff has the RFC for light work, "not very persuasive," and "decreased the residual functional capacity to sedentary exertion work with respiratory and postural limitations to accommodate her impairments." R. 27. It therefore appears that the articulation at one point in the ALJ's decision of an RFC that included a limitation to "standing or walking six hours of an eight hour workday" was an inadvertent and, under the circumstances, harmless error. This characterization is reinforced by a fair reading of the ALJ's narrative discussion of Plaintiff's RFC and by the fact that the hypothetical posed by the ALJ to the vocational expert referred only to the formal definition of sedentary work with no mention of standing or walking six hours in an eight hour workday. R. 63-64 ("If the person is limited to sedentary exertional work, with no climbing of ladders, ropes or scaffolds, only occasional climbing of ramps and stairs, frequent stooping, kneeling and crouching and occasional crawling. No more than occasional exposure to extreme heat and cold, as well as humidity. . . . No more than occasional exposure to fumes, dust, gases, odors and poorly ventilated areas. No work at unprotected heights or with dangerous machinery."). Any error in this regard was surely harmless and will not serve as a basis for reversing the decision of the Commissioner. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

   Plaintiff also complains that the ALJ erred by including in the RFC a limitation to "frequent[ ] stooping, kneeling, and crouching." The ALJ found Dr. Swedberg's opinion that Plaintiff "appears capable of performing only a mild amount of ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects," R. 571-72, "persuasive and consistent with the record including pulmonary function tests which show severe restrictive

13

pulmonary disease with a moderately severe obstructive component." R. 27. Yet the ALJ crafted an RFC that contemplated "frequent[ ] stooping, kneeling, and crouching." R. 22. The term "frequent" is defined as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6. This Court agrees with Plaintiff that there appears to be an inconsistency between Dr. Swedberg's opinion in this regard and the RFC found by the ALJ, an inconsistency that the ALJ failed to explain.

The regulations governing the ALJ's evaluation of the medical opinions in this case, 20 C.F.R. §§ 404.1520c; 416.920c, require the ALJ to "articulate" how persuasive he found the opinions of each medical source. *Id.* at §§ 404.1520c(b); 416.920c(b). Specifically, the regulations "'require that the ALJ provide a coherent explanation of [his] reasoning.'" *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. 2021) (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020)). An ALJ's failure "to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

The ALJ in this case found persuasive Dr. Swedberg's opinion that Plaintiff was capable of only "a mild amount" of bending and kneeling, yet crafted an RFC that contemplated "stooping, kneeling, and crouching" up to two-thirds of an eight-hour workday. Although the ALJ was not required to incorporate every aspect of Dr. Swedberg's opinion into the RFC, *see, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016), the ALJ was, at a minimum, obligated to articulate his reason for apparently rejecting this aspect of the opinion in a manner sufficient to enable this Court to determine that his RFC finding in this regard is supported by substantial evidence.

14

The Commissioner argues that any error on the part of the ALJ in this regard was harmless, because the "jobs identified by the vocational expert are fully sedentary and, thus, do not require walking and standing for six hours per day; nor do they require any kneeling." *Defendant's Memorandum in Opposition*, ECF No. 17, PageID# 897. This Court agrees. *See Dictionary of Occupational Titles* (4th ed., rev. 1991), 1991 WL 672349, § 249.587-018 Document Preparer, Microfilming ("Stooping: Not Present – Activity or condition does not exist; Kneeling: Not Present – Activity or condition does not exist; Crouching: Not Present – Activity or condition does not exist"); *Id.*, 1991 WL 671794, § 209.567-014 Order Clerk, Food and Beverage (same); *Id.* 1991 WL 672186, § 237.367-014 Call-Out Operator (same). Because it does not appear that any error in this regard worked to Plaintiff's prejudice, any such error will not serve to reverse the decision of the Commissioner. *See Shinseki*, 556 U.S. at 409.

    C.    **Significant Number of Jobs**

Finally, Plaintiff argues that the Commissioner failed to carry the burden of proof at step five of the sequential evaluation. Specifically, Plaintiff insists that she is unable to perform the telephone work associated with two of the three jobs identified by the ALJ at step five of the sequential evaluation. *Plaintiff's Statement of Errors*, ECF No. 14, PageID# 878. Plaintiff goes on to argue that the remaining job—document preparer—does not exist in significant numbers. *Id*. The Court disagrees.

In order to qualify for benefits, a claimant must not be able to "engage in any substantial gainful activity" as a result of her impairments. 42 U.S.C. §§ 423(d)(1)(A), 1382(a)(3)(A). This standard is met if the claimant "cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives. . . ." 42 U.S.C.

15

§§ 423(d)(2)(A), 1382c(a)(3)(B). The vocational expert, upon whose testimony the ALJ relied, testified that there are "at least 25,000" jobs as document preparer in the nation. R. 64. This number unquestionably satisfies this standard. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs nationwide); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 579 (6th Cir. 2009) (2,000 jobs). Thus, even eliminating the jobs of food and beverage order clerk and call out operator, the remaining job identified by the vocational expert—document preparer—exists in significant numbers. Plaintiff's contention in this regard is without merit.

VI. **CONCLUSION**

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 14, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  December 30, 2022                *s/Norah McCann King*
                                          NORAH McCANN KING
                                   UNITED STATES MAGISTRATE JUDGE